FREDERICK M. CARSTEN, petitioner,

*v.*

CAROLINE CARSTEN, defendant.

[Decided April 17th, 1919.]

1. Upon exceptions to an adverse master's report in a divorce case, where the hearing is brought on before a vice-chancellor, under rule 113, he may direct the taking of additional testimony, either in open court or before a master, and upon the return of the testimony deal with the subject-matter of the exceptions upon the entire record.

2. In this case exceptions having been filed to an adverse report, the hearing brought on under rule 113, an order having been made permitting petitioner to take additional testimony before the master and permitting the master to return a supplemental report, and the additional testimony having been returned with a supplemental report of the master, to the effect that he considered that a case had been made out, the entire record was considered and a decree *nisi* advised.

3. The rule is as well settled that corroboration may be by circumstances, as that relief will not be granted upon uncorroborated testimony of petitioner or defendant, or both.

On petition, &c. On exceptions to master's report.

*Messrs. Pomerehne & Laible,* for the petitioner.

LANE, V. C.

The master having reported adversely exceptions were filed which came on before me for hearing. An order was then made giving the petitioner leave to take additional testimony before the master, and the master was permitted to return with such depositions as he might take, such supplemental report as he might desire. Further depositions have been taken and the master now, in a supplemental report, advises the court that he is convinced that a decree should go. I concur in that conclusion. The matter is before me on the original report and dep-

ositions, the exceptions and the further depositions taken before the master. Under rule 113 the hearing on the exceptions was brought on before me. Under that rule it is provided that no special reference to a vice-chancellor is necessary to confer power on him to deal with the exceptions and the subject-matter thereof. This necessarily includes power to direct the taking of additional testimony either before him or a master and dealing with the subject-matter of the exceptions upon the entire record. The difficulty the master originally had was lack of corroborated proof as to the willfulness and obstinacy of the desertion. The only witnesses originally produced were petitioner and a sister-in-law of defendant. It clearly appeared from petitioner's testimony that the difficulty between his wife and himself arose out of a difference of religion. She was a Catholic and he a Protestant, and she insisted that they should be remarried by a Catholic priest, to which request he refused to accede. She left him on January 6th, 1914, apparently without other reason than her dissatisfaction with him on religious grounds. She left a note reading as follows:

"Fred, please don't blame my people for this because they don't know anything about it. Good bye. I will leave this bill here for you to pay. You can afford to pay it. You have money in the bank and all the furniture. I have nothing but a few cents. Good bye."

Petitioner was corroborated by the testimony of the sister-in-law of defendant as to the fact of desertion and its continuance; also with respect to there being difficulty between the parties caused by their difference in religion. There was no direct corroboration of any attempt on the part of the husband to induce his wife to return. He testified that some weeks after her leaving he met her on the street and asked her to return and that she refused and that he then took her at her word. He also testified as to having sent her a letter in January, 1914 (neither the letter nor a copy thereof was produced), and that he received no reply. The only witness produced before the master on the supplemental proceedings was the wife, who was forced to appear by subpœna. She testified that she left her husband on January 7th, 1914; that she had definitely made up her mind to

leave and never return; that about two months after leaving she met her husband on the street; that he talked to her and asked her to come back, and that her answer was, "No, she would not live with him;" that she was dissatisfied with him; she also testified as to the receipt of the letter of January 25th, 1914, and that she never replied to it, and that the reason was that he asked her to see him and she did not want to have anything more to do with him; that no matter what course of procedure her husband might have taken she would, under no circumstances, have gone back to him; that she did not and does not care to live with him. She was examined to a considerable extent by the master, and denied that she had had any communication whatever with her husband or any one representing him, or that she had been asked to testify or that she knew of the effect her testimony would have upon her husband's case, and she said that she would testify in any event just as she did because it was the truth and that she did not care what effect it had upon the case. She declined to say what the difficulty between her husband and herself was except that—

"*A.* My husband drank and there are other things that I don't feel like mentioning, which caused me to make up my mind to leave him, and never return. My mind was firmly fixed on going away, but I don't care to bring up these things,"

and, further,

"I do not care to state what they are [referring to her reasons for leaving]. They are of a private nature, and I don't feel that I ought to be compelled to say anything about them if I don't care to. I came to this place because I was subpœnaed, and not because I wanted to come, and I don't think that I ought to be made to talk about things that are private to me and that I have tried to forget."

The letter was produced in which the husband asked his wife to return and indicated that he believed that she was not to blame for the separation but that she had been influenced by others.

.It is the rule that a divorce will not be granted upon the uncorroborated testimony of the husband and the wife. *Garrett* v. *Garrett, 86 N. J. Eq. 293.* This rule was last recognized by the

chancellor in *Boswell* v. *Edsoll* (Boswell), not yet reported. The chancellor, however, in that case recognizes that corroboration of each essential fact need not necessarily be by the testimony of other witnesses, and I have recently dealt with the question in *Parmley* v. *Parmley,* not yet reported. Although the English courts have generally the same rule with respect to granting relief in divorce cases on uncorroborated evidence, the trend of opinion with respect to the application of the rule in England is illustrated by the following cases: *Curtis* v. *Curtis, 21 L. T. 676; Getty* v. *Getty (1917), 98 L. T. 60* (at *p. 334*) ; *Weinberg* v. *Weinberg, 27 L. T. 9; Riches* v. *Riches* (Mr. Justice Coleridge), not yet reported. It may now, I think, be considered as well settled that corroboration may be by circumstances, as illustrated in the cases referred to in *Parmley* v. *Parmley,* as that relief will not be granted upon uncorroborated testimony. Considering the present case, the master may have been justified in holding that the testimony of the husband, corroborated only to the extent that it is by the testimony of the sister-in-law of the wife, was not sufficient, and it may well be that the testimony of the wife, corroborated only to the extent that it is by the testimony of her sister-in-law, may not be sufficient, but when the testimony of the husband and wife are both considered corroborated to the extent that they are by the testimony of the sister-in-law, then I think a case has been made out sufficiently corroborated. The testimony of the sister-in-law indicates quite clearly that it is probable that the testimony of the wife and husband correctly represents the facts. The manner in which the wife's testimony was secured, and the manner in which she gave it, is entitled to consideration. We have also the letter written by the husband unanswered by the wife.

I will advise a decree *nisi.*